NEW-YORK,
May, 1830.

Clark
v
Miller.

CLARK and BUSHNELL *vs.* MILLER and LOZEE.

In an action *by* a firm, the name of a *dormant partner* need not and ought not be used.

Where drovers are sued for the price of cattle entrusted to them to be taken to market and sold, a jury are warranted in allowing the highest sum according to the evidence, the defendants neglecting to shew the prices for which the cattle actually sold.

THIS was an action of assumpsit on the common counts, tried at the Orleans circuit in November, 1828, before the Hon. SAMUEL NELSON, one of the circuit judges.

The plaintiffs and one *House* were jointly interested in a cloth manufactory; Clark and Bushnell bought 15 head of cattle and paid for the same in debts owing to the firm; and it was agreed that House should have *one third* of the avails of the venture upon the happening, of a contingency, which was shewn to have happened. The defendants took the cattle to drive from Monroe county to the Dutchess county market, and agreed with the plaintiffs to sell the same and to account for the proceeds, and were to receive a compensation of $2,50 per head. The defendants took the cattle to market, sold them and paid $261,86 to the plaintiffs, who claimed an additional sum. There were several witnesses sworn as to the value of the cattle, but there was no proof offered by the defendants as to the prices for which the cattle in question were actually sold. The jury found a verdict for the plaintiffs for $53 damages. Before the cause was submitted to the jury, the defendants moved for a nonsuit on the ground of the *non-joinder* of House as a party; which motioned was overruled. House was examined as a witness on the part of the plaintiffs, not being objected to by the defendants. A motion was made for a new trial.

*S. B. Jewett,* for defendants.

*R. Bryant,* for plaintiffs.

*By the Court,* SUTHERLAND, J.  The motion for a non-suit was properly refused upon the trial.  It was founded up-on the allegation that House was a partner with the plaintiffs in the cattle in question, and entitled to a share of the pro-ceeds of the sale, and ought therefore to have joined in the action.

If House was a partner, (which might admit of some ques-tion,) he was a dormant partner ; his name did not appear in the transactions relative to the cattle, and he was not held forth or known to the world as a partner, or as in any manner interested in the business of the plaintiffs.  He was not a party to the contract with the defendant ; it was made ex-clusively with Clark and Bushnell.  Though a dormant partner may be sued for the debts of a firm, yet his name need not and ought not to be used when they are plaintiffs. This was expressly ruled by Lord Kenyon in *Leverick & Pollard* v. *Shaftoe,* (2 Esp. R. 468 ;) and the same learned judge, in *Ross and others* v. *Day,* (2 Esp. R. 469, note,) al-lowed a set off of an individual demand against a partnership debt, where it appeared that the business had been carried on in the name of one of the partners only, with whom the defendant dealt, and to whom he might have given credit on the ground that he could avail himself of it by way of off set. (7 T. R. 361, note.)   The same points were also ruled in *Lloyd* v. *Archbowle* and *Mawman* v. *Gillett,* (2 Taunt. 324, 5.  1 Chitty's plead. 9.  3 Cowen, 84.)  House was not ob-jected to as an incompetent witness.

The evidence was clearly sufficient to support the count for money had and received.  The fact that the defendants had paid to the plaintiffs $260 on account was *prima facie* ev-idence that they had  sold the cattle for cash and received this money ;  and that presumption is  corroborated by other cir-cumstances in the case.

As to  the amount for which the cattle were sold, it was a proper subject for the jury to  determine.  The evidence as to the value of the cattle was somewhat contradictory ; but it is to be borne in mind that it was in the defendants' power to  remove all doubt on the subject, as they and they alone

NEW-YORK,  knew to whom they were sold and for what price. Under
May, 1830.  such circumstances, it was the duty of the jury to allow the
~~~~~~~     highest sum which, according to the evidence in the case
Hyde        they could probably have been sold for.
v.
Hyde.

<div align="right">Motion for a new trial denied.</div>