Catón, Justice, delivered the opinion of the court: This was an action of trespass brought by Dudley against Talcott for taking from his possession and disposing of a quantity of merchandise. The case was submitted to the court below on an agreed state of facts, from which it appears that Tracy, Maver & Irwin obtained a judgment in the circuit court of the United States against one Smith for 11155.69, on the 10th of December, 1842, on which an execution issued on the 19th of January, 1843, and came to the hands of Talcott, as deputy marshal, on the 23d of the same month. On the same day that the judgment was rendered, Dudley was appointed assignee in bankruptcy of one Bill, who was a dormant partner of Smith'. The debt on which this judgment was rendered had been contracted by Smith on account of the dormant partnership, to which also the goods belonged, which Tallcott seized on the 27th of February, and sold on the 2d of March, 1843. Before Talcott levied on the goods, Dudley, with the consent of Smith, took possession of the goods and locked them up in the store where Talcott found them. The circuit court rendered a judgment for the plaintiff for $337, being the value of a moiety of the goods. This judgment we are now called upon to review. I take it to be - a well settled principle of law that, by a degree of bankruptcy, the assignee succeeds immediately to all the rights and interests of the bankrupt to just the same extent that the bankrupt himself had then, subject to and affected by all the equities, liens and encumbrances existing against them in the hands of the bankrupt. The assignee is not a bona fide purchaser for a valuable consideration: but he rather acquires a title by operation of law, and the title comes into his hands in no" more perfect a condition than it left the hands of the bankrupt. Indeed the assignee may be considered rather as a volunteer than a purchaser, and takes the title divested of no lien or equity previously created', either by operation of law, or the act of the bankrupt. These are familiar and well established rules under the English bankrupt law (Brown v. Heathcote, Atk. 160; Jewson v. Marston, 2 Atk. 117; Milford v. Milford, 9 Vesey 87), and have been repeatedly recognized and adopted under the bankrupt law of the United States. Marshall v. Winslow, 6 Law Rep. 352; Parker et al. v. Muggridge, 5 Law Rep. 358; Ex parte Newhall, 5 Law Rep. 308, 358. But although the assignee succeeds to all the legal title of the bankrupt, still he does not in all cases succeed to all his right of possession, and particularly so in case of* the bankruptcy of one member of a partnership. By the decree of bankruptcy the partnership is dissolved, and that which was a joint tenancy between the former members of the firm becomes a tenancy in common between the remaining partner and the assignee; [*486] and unlike the ordinary casé of a tenancy in common, where both tenants are entitled to the possession, the remaining partner alone is entitled to-the possession, disposition, and control of the partnership effects, and the assignee is only entitled to an account of the bankrupt’s share of the, partnership effects, after the payment of the partnership debts. Ex parte Norcross 5 Law Rep. 124. By the decree of bankruptcy the bankrupt partner becomes eiviliter mortuus, so far as the partnership effects and creditors are concerned, and the assignee becomes the personal representative of the bankrupt, the same as an executor or administrator (Exparte Foster, 5 Law Rep. 71), and as in such a case the other partner succeeds to the survivorship, and the creditors of the firm are entitled to be first paid out of . the partnership effects, before the individual creditors of the bankrupt can come in for any share of those assets. Ex parte Cooke, 2 P. Wms. 500; Ex parte Hunter, 1 Atk. 228; McCullock v. Dashiell, 1 Har. & Gill 96; 2 Wheat. Selw. 1162, note 1; 3 Paige 171, 517. Upon these principles, even if Smith and Bill had been ostensible partners,, the judgment on which this execution was issued being for a partnership debt was entitled to a priority over any individual debts of either of the partners out of the partnership effects, and consequently these goods were first liable under this execution. As creditors of the firm, the plaintiffs in that execution had an equitable lien upon these goods, and had a right to . pursue them wherever they could find them at any time before they passed into the hands of bona fide purchasers. It was urged that Smith, having voluntarily delivered up the goods to the assignee, be thereby acquired the legal possession, of which he could not be divested, but had a right then to go on and administer them the same as any other assets of the bankrupt. The equitable lien of the creditors could not be thus destroyed. It was a right which' the law recognizes and respects, and will take care to enforce. But even admitting the right of the assignee to the possession of the goods with the assent of Smith, still Tracy, Maver & Irwin being execution creditors, and having a superior right to a satisfaction of their debt out of the partnership effects, had a right to enforce that satisfaction by a levy and sale, without inconvenience or embarrassment from the assignee any more than from Bill, had he not been declared a bankrupt. Mitchell v. Winslow, 5 Law Rep. 352. It was supposed, however, that the circumstance of Smith being insolvent so changed the rights of the parties that the assignee was'entitled to the possession of and to administer upon the partnership effects without being disturbed by the execution; and in support of this position cases were cited where the court of chancery has interfered and given the control and disposition of partnership effects to the assignee in bankruptcy, or executor of one partner, where it shown that the other [* 437] partner was also insolvent, and there was danger that the partnership property would be squandered or misapplied. That courts of equity are possessed of such a power, is not questioned, and under the direction of a sound discretion, they will never fail to exercise it, whenever a proper case is presented; but in doing this, so far from divesting or disturbing liens, either legal or equitable, which creditors of the firm, or third persons may have on the property, they will take care to preserve and enforce them. Parker et al. v. Muggridge, 5 Law Rep. 359. Upon the decree of bankruptcy, or death of one member of a partnership, or dissolution by agreement, the artificial or civil person which was the creature of the partnership articles, ceases to exist, and the effects belonging to the partnership are the assets of that civil person, out of which its creditors are entitled first to be paid; and into whosoever hands those assets go, as the administrator or representative of that artificial being, they must be held in trust for the payment of those debts; and after they are paid, the former partners, or their representatives, have an interest in the surplus. As, then, the assignee of the bankrupt only has an interest in a just division of what is left after the payment of the partnership debts, so far as we can learn from the facts agreed upon in this case, the assignee could take nothing ; for the debts far exceed the value of the assets, and no surplus could be left in which the assignee could claim a share; so that, in fact, and in law, he could have no interest in the matter, it being only in a division of the surplus that he could claim an interest. But admitting the right of the assignee to the possession, control, and disposition of the assets of the firm, to the same extent that Smith had, still he would have held them in trust for the same purposes, and must have disposed of them and applied the proceeds in the same way. He could not have applied the proceeds in payment of the expenses of the bankrupt proceedings, or in payment of the private debts of the bankrupt, or in liquidation of any other charge properly existing against the person or estate of him alone; but he would have been obliged to apply the whole in satisfaction of this particular debt alone, for it does not appear there were any other claims against the firm; and if there were, those plaintiffs, by their superior vigilance, in obtaining judgment and execution, acquired a lien and superior right; and so, if the plaintiff should recover in this cause, he must recover as representative of the firm, and not of one member of it alofie; so that whatever money he should recover on the judgment, he must hold as trustee for these creditors, and would immediately have to apply the whole of it in the payment of this particular [* 438] debt, in attempting to collect which, in obedience to the mandate of the law, the alleged trespass was committed. This it seems to me would be but a legal farce, and acted out at a very great and useless expense. But there is another principle of law which is directly applicable to this ease, and which I thmk is equally conclusive against the plaintiff’s right to recover. I have hitherto examined this case as if Bill had been an open and ostensible partner. But such was not the ease. He was but a dormant partner, secretl}' enjoying the benefits of the business, while his interest was kept concealed from the world. The business was conducted in the name of Smith, with whom alone these judgment creditors dealt; and whom alone they supposed they were trusting; but it was not alone on his personal responsibility that they trusted, but on the property which he had in his possession, with which he was doing business. They saw property in his hands, and by the silence of the other partner, they were told that it was his, and in the same way were they lead to believe that the goods, which they were selling him, were also to be his, and help to form a fund from which they might seek payment; and now, when they recover a judgment against Smith, perhaps for the purchase money of these identical goods, and attempt to make their money from them, they are told, for the first time, that they are not Smith’s, but belong to the assignee of Bill, who is a bankrupt; and must go to pay the expense of obtaining his discharge, and to satisfy his individual creditors. This would be as repugnant to the principles of law, as to the dictates of natural justice. The law and the courts discountenance these secret trusts and partnerships, as opening a wide door to the greatest frauds. Most effectually to prevent this, whenever the rights of third persons intervene, neither of the parties are permitted to assert the partnership, but the whole is considered as an individual transaction, and the property as belonging to the ostensible partner, unless the creditors choose to treat the dormant partner as interested. Indeed, I may say there is no partnership, only as between the partners themselves ; and this principle of overlooking the dormant partner is carried so far, that in suits commenced by the firm, he need not be joined.. Thus in Clarke et al. v. Miller, 4 Wend. 628 (see also Clarkson v. Carter, 3 Cowen 84; 2 Esp. 486), the court says: “Though a-dormant partner may be sued for the debts of the firm ; yet his name need not and ought not tobe used when they are plaintiffs;” and in the case of Stacy et al. v. Duy, 7 Term R. 361 and note c. it was held that in a suit by a firm, when all the members were sleeping partners but one, the defendant might set off an account against the one in whose name the business was conducted, and with whom alone he supposed he was dealing; and in Lord v. Baldwin, 8 Pick. 348, the principle that the creditors might consider the active partner alone inteicsted, is very accurately and clearly stated by Ch. J. Parker. He says : “ Even if he (the dormant partner) owned the whole of the stock, as [*439] between him and the known man of business, still it is in law the property of the latter, for he is allowed to claim and use it as his alone, and thus lead persons to trust him upon the faith of goods in his possession.” He adds; “The property then is not the dormant partner’s, to the prejudice of those who trust him who carries on the business, and obtains the credit.” And in a suit by the firm, in his name, the defendant might, according to the decision made by this court at this term, in the case of Brooks v. McKinney, 'ante 309, call the sleeping partner, who owned the whole of the stock, as a witness, and make him swear directly against his interest. It would be difficult to cite a case that more forcibly illustrates the principle that he is estopped from asserting his own interest in the cause, to the prejudice of the interests of others. • ■ To apply these principles to the case under consideration, we find Smith doing business alone, and professedly and apparently on his own account. Under this belief, Tracy, Maver & Irwin trust him with goods, which are put into his business, and when they obtain judgment and execution against him, and go to levy on these goods, they are told that they are not the goods of Smith, nor liable to be sold for his debts ; but that Bill, of whom they may have never before heard, had an interest in them, to whose assignee in bankruptcy they have gone, for whose benefit and the benefit of his creditors they must 'be sold, to the prejudice of those who have given Smith a credit for the same goods. This will not do. Bill, by allowing Smith to conduct the business in his own name, without disclosing to the world that he was interested himself, is forever estopped from denying that Smith was alone interested in the business, when the rights of third persons intervene ; and if Bill would be estopped from asserting his interest, then his assignee, upon the principles before laid down, is equally estopped from asserting a claim to the goods to the prejudice of the rights of the creditors. Bill, by remaining silent, disclaimed to those who dealt with Smith, any interest in his business, and to that disclaimer they have a right to hold him, and whatever their rights were, as against him, so they are as against his assignee. They sold the goods to Smith; to him they trusted them, and in law, as to them, they continued Smith’s, unless sold to a bona fide purchaser. These are principles required by the policy of the law, which are indispensable for the purpose of preventing frauds, and from which the courts will not depart. As the property of Smith, then, the ostensible • man of business, the marshal had a right, in every point of view, to levy this execution, and in doing which he was guilty of no trespass. We therefore think he was entitled'to judgment. In this opinion we steer wide of several important ques-[*440] tions which were discussed at the bar, but which we think are not necessarily involved in the decision of this case. Judgment is reversed with costs. Judgment reversed.