MALONEY ET AL., RESPONDENTS, *v.* KING ET AL., APPELLANTS.

(No. 1,812.)

(Submitted March 3, 1904. Decided March 29, 1904.)

*Mines—Removal of Ore — Action for Damages—Burden of Proof—Rebuttal—Statutes—Instructions—Defenses.*

1. The owner of a mining claim is entitled *prima facie* to everything beneath the surface of his claim, and under such title may prevent the intrusion of any one not showing a paramount right to enter within the planes of his boundaries.

2. Code of Civil Procedure, Section 1080, as amended by Session Laws of 1901, p. 160, provides that the party on whom the burden of the issues rests must first produce his evidence, and the adverse party must then produce his evidence, and that the parties will then be confined to rebutting evidence. In an action by the owners of a mining claim for removal of ore from within its boundaries, the issue was the location of the point at which a certain vein departed from a side line of defendant's location. Defendants, after plaintiffs showed a taking of ore from within their boundaries, introduced evidence that the vein departed at the point as claimed by them, whereupon plaintiffs in rebuttal introduced evidence that the vein departed at the place claimed by them as shown by the fact that the vein was exposed in the cellar of a certain building. *Held,* that it was error not to permit defendants to show in rebuttal that the vein located in the cellar was along a course or strike which would bring it out at a point other than claimed by plaintiffs.

3. In an action for damages sustained by plaintiffs, owing to defendants having removed ore from within the boundaries of plaintiffs' location, an instruction that if defendants had carried away ores belonging to plaintiffs, and in so doing they were mixed with other ores to which defendants were entitled, so that the amount of each could not be ascertained, plaintiffs were entitled to recover the value of all ores taken with which the ores belonging to plaintiffs were mixed, was erroneous.

4. In an action for damages sustained by plaintiffs owing to the removal of ores from their mining location, plaintiffs having shown *prima facie* the amounts taken, it was then incumbent on defendants to show that they took a less quantity than plaintiffs' proof tended to show.

5. Code of Civil Procedure, Section 1081, provides that when, in the opinion of the court, it is proper for the jury to have a view of the property which is the subject of litigation, it may order them to be conducted there. *Held,* that the view is within the trial court's discretion.

6. Discretion of court in granting a view of premises will not be reviewed on appeal, in the absence of a clear showing of error.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

ACTION by James H. Maloney and others against Silas F. King and others. From a judgment in favor of plaintiffs, and from an order denying a motion for a new trial, defendants appeal. Reversed.

### STATEMENT OF THE CASE.

The Plymouth lode mining claim is owned by plaintiffs. When the action was commenced the Silver King lode mining claim was owned by defendants King, Murray and Daly.

Daly having died, the defendant Margaret Daly, as administratrix of his estate, was substituted for him. Defendants Sutton and Talbot were operating the Silver King under a lease. The Plymouth lies south of the Silver King. The plaintiffs by this action seek to recover of the defendants a judgment for $50,000, the value of ores alleged to have been wilfully, knowingly and unlawfully mined, extracted and carried away by defendants, and to obtain an injunction restraining them from entering upon that part of the Plymouth which lies east of a vertical plane passing through a point on the north side line of the claim 405 feet distant from the northeast corner of the claim, the plane extending south seven degrees west across and vertically downward through the Plymouth claim; and from mining, carrying away or converting to their own use the ores and minerals therein.

The defendants deny that they have mined, extracted, taken out or carried away from beneath that portion of the Plymouth claim described in the complaint, any ores or minerals belonging to the plaintiffs; and aver that the defendants Daly, Murray and King are the owners of the Silver King claim; that the apex of the vein from which the defendants took the ore in question is wholly within the surface boundaries of the Silver King, extending in an easterly and westerly direction for the entire length of that portion of the Silver King which lies north of and adjacent to that portion of the Plymouth claimed by the plaintiffs, and say that the only drifts or levels run by the defendants which extend beneath the surface of the Plymouth vein have been run by defendants on said vein, and not otherwise; and deny that plaintiffs are now or ever have been the owners of any part of said vein, or that it is or ever has been a part of the Plymouth.

The vertical plane above described will be hereafter referred to as the injunction line. Upon the trial the jury found for the plaintiffs, whereupon the court entered judgment and decree in their favor. From the judgment and an order denying their motion for a new trial defendants have appealed.

*Messrs. McBride & McBride, Mr. William Scallon,* and *Mr. James E. Murray,* for Appellants.

*Mr. C. P. Drennan,* and *Mr. John J. McHatton,* for Respondents.

MR. COMMISSIONER CALLAWAY prepared the statement of the case, and also the following opinion for the court:

1.  Being the owners of the surface ground described in their complaint, the respondents were *prima facie* entitled to everything beneath the surface of their claim, and under such *prima facie* title could prevent the intrusion of any one not showing a paramount right to enter within the vertical planes of their boundaries. (*Maloney* v. *King,* 25 Mont. 188, 64 Pac. 351; 27 Mont. 428, 71 Pac. 469; *Parrot Silver & Copper Company* v. *Heinze,* 25 Mont. 139, 64 Pac. 326, 53 L. R. A. 491, 87 Am. St. Rep. 386; *Boston & Montana Consolidated Copper & Silver Mining Company* v. *Montana Ore Purchasing Co.,* 188 U. S. 632, 23 Sup. Ct. 434, 47 L. Ed. 626.)

Respondents' ownership of the surface ground of the Plymouth lode mining claim not being controverted, they, in order to make out a *prima facie* case, merely gave evidence tending to show that the appellants had willfully, knowingly and unlawfully extracted and carried away large quantities of ore, of great value, from within the vertical planes of the boundaries of that portion of the Plymouth described in their complaint, and rested. Appellants then sought to justify the taking of the ore by showing that it was taken from a vein which has its apex in the Silver King ground. Much testimony was introduced to prove this contention. A model and numerous maps were produced as explanatory of appellants' theory. Appellants having rested, respondents sought to obviate the showing made by appellants, and on their part introduced a large number of maps. In order to make clear the contentions of the parties

reference is made to the following diagram, which, though not
technically correct, will serve for illustrative purposes:

Appellants claim that the apex of the vein from which the
ore was taken is exposed throughout the entire length of their

surface drift, and say that the so-called Plymouth vein is merely a spur thereof, which, in any event, does not pass beyond the Silver King south side line until it reaches a point somewhat over forty feet east of the point where the injunction line intersects the south side line. Respondents, on the other hand, claim that their Plymouth vein is the main vein.

In passing it is well to remark that the discovery vein in the Silver King seems to lie north of the veins mentioned, and is not involved in this discussion.

Respondents insist that the Plymouth vein departs entirely from the south side line of the Silver King at the injunction line; in other words, it is contended that the foot wall of the vein departs exactly where the injunction line crosses. In order to demonstrate this theory respondents' witnesses testified that the apex of the Plymouth vein—a vein between two and three feet in width at the apex—is disclosed in three places within fifty feet; that the hanging wall is exposed in the southwest corner of a cellar (marked "B" on the diagram), beneath the house (marked "C") immediately west of the Robinson raise (marked "D"), in the top of the engine room raise (marked "E"), and at the top of and in the western portion of the Plymouth shaft (marked "F"). As one of the witnesses testified, "Actually locating these three points, and placing a straight edge thereon, and they exactly line up."

No reference was made to the course of the Plymouth vein in respondents' case in chief. The first testimony concerning the vein disclosed in the cellar was adduced in their testimony in rebuttal of appellants' case. When respondents again rested appellants offered to prove that the hanging wall of the apex of the vein exposed in the cellar of the house represented on respondents' map, Exhibit L, and referred to in the testimony of respondents' witnesses, is nine feet north of the position of the apex at said point as testified by said witnesses, and is nine feet north of the location of the foot wall as represented by the map. This vein is represented by the line marked "A, A." They further offered to prove that the apex of the vein exposed

in the cellar is six feet in width, the foot wall thereof being twelve feet further north than testified to by respondents' witnesses, and twelve feet further north than is shown on respondents' map; that the apex as exposed in the cellar is directly over the eastern portion of appellants' "23 foot upraise" (marked "G, G"), immediately east of where the apex connects with the Silver King surface drift; and that the course and strike of the apex as exposed in the cellar is about south 72 degrees east, and if continued on its strike would depart from the Silver King at a point 44½ feet east, measured along the south side line of the Silver King lode claim, from the point where the injunction line crosses said south side line, or, approximately, at the point marked "X" in the diagram. The "23 foot upraise" referred to is a connection between the surface drift, which is about 12 feet below the surface, and the "23 foot level," which is 23 feet below the surface, and this explains the apparent curvature of the upraise as shown on the diagram. Appellants further offered to prove that they had no knowledge of the existence of any cellar under said house, or of any apex exposed therein, prior to the time that they heard the testimony of the witnesses on behalf of plaintiffs. The court sustained an objection to this offer, and refused to allow the defendants to put in any further testimony.

It is readily seen that the crucial point in the case was, at what point does the so-called Plymouth vein depart entirely from the south side line of the Silver King claim? Respondents claim that it departs entirely at the injunction line, which is at a point between the cellar and the engine room raise. Appellants, on the other hand, claim that it departs approximately at the point marked "X." Quartz veins in their strike across the country usually follow a somewhat irregular course. In order to show definitely the course of the Plymouth vein, and to demonstrate the exact point at which it crosses the south side line of the Silver King, it became important to prove its course or strike, and hence respondents attempted to show its appearance on both sides of the south side line, and on either side of

the point where the injunction line intersects the south side line. One of these points of appearance was in the engine room raise and the other was in the cellar. The exact location of the vein in the cellar, therefore, became material.

We think the court should have admitted the evidence. Appellants could not reasonably have anticipated that respondents would in their case in rebuttal give testimony concerning the disclosure of a vein in the cellar. The cellar was covered by a house, and it was therefore not the subject of ordinary observation. We cannot see how it can be said that appellants should have known of the disclosure of the vein in the cellar prior to the time respondents gave testimony concerning it. The testimony offered would have tended, in some degree at least, to rebut respondents' theory, and appellants had the right to do that if they could.

Section 1080 of the Code of Civil Procedure, as amended (Session Laws 1901, p. 160), prescribes: "When the jury has been sworn, the trial shall proceed in the following order, unless the court, for good cause and special reason, otherwise directs: * * * (3) The party on whom rests the burden of the issues must first produce his evidence; the adverse party will then produce his evidence. (4) The parties will then be confined to rebutting evidence, unless the court for good reasons, in furtherance of justice, permits them to offer evidence in their original case."

After respondents had made out their *prima facie* case, as above noted, the burden was on the appellants. They sought to justify their asportation of the ore by showing their ownership of the vein from which it was taken, and offered evidence to show the course or strike of the vein. Then, the respondents, being in the position of defendants upon that issue, controverted the evidence of appellants, and gave evidence tending to show that they, the respondents, are the owners of the vein from which the ore was taken, and testified concerning its course or strike. The truth of this testimony was what appellants sought to disprove.

Had the appellants been able to prove their contention to the effect that the apex of the so-called Plymouth vein passes out of the south side line of the Silver King at a point 44½ feet east of the injunction line, or at any point east of the injunction line, they would have proved either a complete or partial defense to respondents' action; for admittedly the appellants were the owners of all ores which they had extracted from the Plymouth claim at a point west of a plane passing through the point where the foot wall of the Plymouth vein departs from the Silver King, and drawn parallel with the west end line of the Silver King.

The burden being on appellants to prove that they were the owners of the vein from which the ore in question was taken, they were entitled to close the proofs on that issue, or, at least, to rebut any new matter set up by the plaintiffs. The correctness of this principle is illustrated in the case of *Lisman* v. *Early*, 15 Cal. 199. That was a suit on a note. The answer pleaded payment, and averred that money had been paid the owner of the note, which he promised to credit thereon. The court said: "We think the court erred in excluding the rebutting testimony of defendants, and we here remark that as the admission of evidence, even after the party has had an opportunity to offer it and has failed, is a matter of discretion, it is better for the court, whenever the ends of justice require it, to suffer the testimony to go in. But in this case the plaintiff offered the note sued on in evidence and rested. The defendant, not disputing the execution of the note, offered in evidence some receipts for the purpose of proving payment. To rebut this, the plaintiff offered proof tending to show that these payments applied to an open account against defendants. The defendants then proposed to show that there was no such account made or existing. We do not see how the defendants could anticipate this proof of the plaintiff in regard to the account, and to deny them an opportunity of rebutting it might be equivalent to a denial of a right to prove their defense. The burden of the proof was really on the defendants to prove payment under

the issue, and the defendants were entitled to close the proofs, at least to rebut any new matter set up by the plaintiff. See *Shepard* v. *Potter,* 4 Hill, 204; Cow. Treat. 992; Cow. & Hill's notes to Phil. Ev. 711, 718, and the cases cited in *Shepard* v. *Potter, 4 Hill, supra."* And see *Wade* v. *Thayer,* 40 Cal. 578; *Foote* v. *Richmond,* 42 Cal. 442; *Chamberlain* v. *Raymond,* 3 Utah, 117, 1 Pac. 850; 1 West Coast Rep. 522; *People* v. *Page,* 1 Idaho, 190; *City of Rock Island* v. *Starkey,* 189 Ill. 515, 59 N. E. 971; *Tathwell* v. *City of Cedar Rapids,* 114 Iowa, 180, 86 N. W. 291; *McLeod* v. *Lee,* 17 Nev. 103, 28 Pac. 124; *Comstock* v. *Smith,* 20 Mich. 338.

Respondents insist that appellants, in order to justify their taking of the ore, had the burden of proving the exact point at which the vein passes out of the south side line of the Silver King. Appellants assumed the burden of that issue, and under this view, therefore, had the right to open and close thereon. On the other hand, if, as respondents contend, they had the right to open and close the case because the taking of the ore is the gravamen of the action, then they are confronted with this rule, which is readily seen to be deducible from the statute and the foregoing authorities: When the respondents, in rebutting appellants' testimony, introduced in evidence a new, affirmative and material fact, which the appellants could not reasonably have anticipated, the latter should have been permitted an opportunity to rebut it, and the refusal of the court to allow them so to do amounted to an abuse of discretion.

2. The appellants complain because the court refused to admit in evidence a glass model proffered by them. Without entering into a discussion of the subject, it is sufficient to say that we think the court fully justified in taking the course it did.

3. Appellants, upon their application prior to the trial, were permitted to do considerable development work to show the actual conditions existing in the disputed ground. During the trial they asked permission to make a certain upraise, which they said would require but a short time, as the upraise would be only from five to ten feet in height, but the request was de-

nied by the court. As the case must go back for a new trial, it is unnecessary to pass upon the propriety of the court's action, as prior to that event appellants may ask the the court's permission to do the contemplated work.

4. As to the instructions. Appellants complain of instructions Nos. 18 and 19. The discussion of one will apply to both, and we therefore quote No. 19: "You are instructed that if you find from the evidence in this case that the defendants mined and carried away ores belonging to the plaintiffs from that portion of the Plymouth lode claim described in the complaint, and lying east of the line referred to in the evidence as the injunction line, and from a vein having its apex entirely therein, and that in mining and carrying away of said ores they were mixed with other ores taken from the workings west of said injunction line, or west of the portion of the vein which you may find from the evidence belongs to the plaintiffs, so that the amount and value thereof cannot be ascertained from the evidence, then you are instructed that *the plaintiffs are entitled to recover the value of all the ores shown to have been taken from beneath the surface of the Plymouth lode claim,* with which said ores belonging to plaintiffs were mixed, and you are instructed to arrive at the value of the same upon the evidence and under the instructions of the court, and return your verdict in favor of the plaintiffs therefor." The italics are ours. This instruction is wrong, and prejudicial to appellants. Appellant Sutton, under whose immediate supervision the ore was extracted, testified that he took ore from both sides of the injunction line. Respondents were entitled to recover only the value of the ores taken by appellants from that portion of the Plymouth claim which lies east of the line passing through the south side line of the Silver King claim, where the apex in question departs entirely therefrom, and drawn parallel to the west end line of the Silver King. Respondents admit that appellants are entitled to the ores which lie west of said line, and which belong to the vein which has its apex in the Silver King. Respondents having proved in their *prima facie* case that ap-

pellants had taken away and converted to their own use a large quantity of ore of great value from that portion of the Plymouth which lies east of the injunction line, it was then incumbent upon appellants to avoid the showing made by the respondents. This they could do by proving that the ore was extracted from a vein which has its apex in the Silver King claim. While admitting that they did take ore from beneath the surface of the Plymouth, they could have shown, if such was the fact, that such ores as they took were from such portion of the Plymouth as lies west of the forbidden line; or, if they were unable to prove that they took all the ore extracted from the Plymouth west of the line, they were at liberty to have shown that they took a less quantity from respondents' ground than the latter's proof tended to show.

Respondents, in attempting to sustain the instruction under consideration, rely upon the cases of *St. Clair* v. *Cash Gold M. & M. Co.,* 9 Colo. App. 235, 47 Pac. 466, and *Little Pittsburg Con. M. Co.* v. *Little Chief Con. M. Co.,* 11 Colo. 223, 17 Pac. 760, 7 Am. St. Rep. 226. In the latter case it is said: "In the American note to the leading case of *Armory* v. *Delamirie,* 1 Smith, Lead. Cas. pt. 1, 679, the doctrine is broadly stated thus: 'When the nature of a wrongful act is such that it not only inflicts an injury, but takes away the means of proving the nature and extent of the loss, the law will aid the remedy against the wrongdoer, and supply the deficiency of proof caused by his misconduct, by making every reasonable intendment against him, and in favor of the person whom he has injured. A man who willfully places the property of another in a situation where it cannot be recovered, or its true amount or value ascertained, by mixing it with his own, or in any other manner, will consequently be compelled to bear the inconvenience of the uncertainty or confusion which he has produced, even to the extent of surrendering the whole if his share cannot be distinguished, or responding in damages for the highest value at which the property in question can reasonably be estimated' —citing *Lupton* v. *White,* 15 Ves. 432; *Hart* v. *Ten Eyck,* 2

Johns. Ch. 62, 108; *Ryder* v. *Hathaway*, 21 Pick. 298; *Clark* v. *Miller*, 4 Wend. 628; *Bailey* v. *Shaw*, 4 Fost. (N. H.) 297 [55 Am. Dec. 241]; *Perston* v. *Leighton*, 6 Md. 88."

The principle laid down in those cases is applicable to this only to this extent: Respondents, by measurements taken, proved that appellants had taken a large quantity of ore, of an estimated value per ton, from beneath that portion of the surface of the Plymouth claim described in their complaint. Presumably the appellants knew the exact amount and value of the ore taken by them from that particular ground. If, while admitting their taking of certain ores from the Plymouth ground east of the line, they failed to disprove respondents' testimony as to the amount and value thereof, having in their possession the means of disproving it, they cannot complain that the verdict against them is too large.

As said in Lindley on Mines, (2d Ed.) Sec. 668: "In an action for taking ore from a mining claim, the plaintiff labors under great difficulty in proving the exact amount of damages he has sustained, and the defendant has the means in his power of showing the correct amount of ore taken out; and if he neglects to do so he cannot complain that the jury, by their verdict, have fixed a large estimate upon the damages."

The instruction told the jury, in effect, that if the appellants took some ore which belonged to them, and some which belonged to respondents, and mixed the same, respondents could recover the value of the whole, unless appellants separated the same by testimony, and proved the amount which rightfully belonged to each. The principle of the instruction, carried to its logical result, might make appellants liable for vastly more ore than was ever extracted from respondents' ground, and cannot be supported.

In the first instance it was incumbent upon the respondents to make at least a *prima facie* showing of the amount of ore which appellants had extracted from the ground described in the complaint, and under no theory of the case could respondents recover more than the value of that amount of ore. If

appellants claim that a portion of the ore which respondents say the appellants took away was in fact extracted from some place other than the ground in dispute, that was a matter of defense which it was for the appellants to prove.

Appellants also urge that the court erred in using the following language in instruction No. 1: "The defendants further admit that at the time this action was commenced they were engaged in mining and extracting ores from that portion of the Plymouth lode claim described in the complaint." It is true that the language quoted is somewhat inaccurate. If this sentence had read: "The defendants further admit that at the time this action was commenced they were engaged in mining and extracting ores from beneath the surface of that portion of the Plymouth lode claim described in the complaint," the instruction would have been correct. Properly speaking, if appellants took ore from their own vein, which dipped beneath the surface of the Plymouth, they took no portion of the Plymouth, but only what was their own. This suggestion is also applicable to a number of other instructions given. However, when they are all read together, it is apparent that the jury could not have been misled by the language employed.

5. At the close of appellants' testimony they requested the court to allow the jury to inspect the ground and workings in controversy, for the purpose of giving the jury an opportunity to determine for themselves the real facts in the case. The court refused the desired permission. Section 1081, Code of Civil Procedure, provides: "When, in the opinion of the court, it is proper for the jury to have a view of the property which is the subject of litigation, or of the place at which any material fact occurred, it may order them to be conducted, in a body, under the charge of an officer, and one person representing each party, to the place, which shall be shown to them by the persons appointed by the court for that purpose. While the jury are thus absent, no person, other than the persons so appointed, shall speak to them on any subject connected with the trial, and such persons shall not speak to the jury upon any matters con-

nected with the subject of the action, but may point out to the jury the property in litigation, or the place at which any material fact occurred." The language of the section leaves the question whether the jury shall be allowed to inspect the premises in the discretion of the trial court, and its refusal to permit the inspection will not be reviewed by this court, in the absence of a clear showing of error. No such showing is made in this case. See *Klepsch* v. *Donald,* 4 Wash. 436, 30 Pac. 991, 31 Am. St. Rep. 936; *Andrews* v. *Youmans,* 82 Wis. 81, 52 N. W. 23; *Leidlein* v. *Meyer,* 95 Mich. 586, 55 N. W. 367; Jones on Evidence, Sec. 409; *People* v. *Fitzpatrick,* 80 Cal. 538, 22 Pac. 215.

6. The reocrd in this case consists of over 1,200 printed pages, and appellants have assigned 79 specifications of error. We have given them all careful examination, and find that either there is no merit in them, or that the questions, other than those above discussed, are unnecessary to a decision of the case, and will not aid the court upon a new trial.

We are therefore of the opinion that the judgment and order should be reversed, and the cause remanded for a new trial.

.PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are reversed, and the cause is remanded for a new trial.

Rehearing denied May 2, 1904.