[Crim. No. 743. In Bank. — November 21, 1901.]

THE PEOPLE, Respondent, v. MANUEL AMAYA, Appellant.

134 531
f134 542
134 543

134 531
138 533
134 531
143 640
144 60
134 531
e145 724

CRIMINAL LAW — MURDER — CHALLENGE TO PANEL — OPEN VENIRES — BIAS OF SHERIFF — CONTINUANCE OF JURORS SWORN — EXTRA CHALLENGES — WAIVER OF RIGHT TO OBJECT. — Upon a prosecution for murder, where two separate challenges to the panel of talesmen summoned upon open *venires* to complete the jury, for bias of the sheriff, were overruled, and three jurors were impaneled and sworn, and five peremptory challenges exercised thereunder, and a third challenge under the third *venire* was sustained upon further evidence of bias, after which the privilege was conferred upon the defendant to use five additional peremptory challenges, of which he availed himself, without removing any of the three jurors impaneled, such voluntary continuance of those jurors proves conclusively that he preferred them, and deprives him of the right to object to the rulings of the court upon the previous challenges.

ID. — CHALLENGES BY PEOPLE — IMPLIED BIAS OF JURORS — OPPOSITION TO CIRCUMSTANTIAL EVIDENCE — DISQUALIFICATION. — Upon challenges by the people for implied bias of jurors, who stated that they would not base a verdict of guilty upon circumstantial evidence, it cannot be assumed that the case for the people would derive no support from circumstantial evidence. Jurors whose conscience would not permit them to act upon legal evidence in a capital case are disqualified.

ID. — ALLOWANCE OF CHALLENGE NOT SUBJECT TO EXCEPTION. — The ruling of the court allowing a challenge for implied bias of a juror is not the subject of exception.

ID. — EVIDENCE — DYING DECLARATION OF DECEASED — PRELIMINARY PROOF. — The dying declaration of the deceased is admissible evidence, where there is clear preliminary proof that the declaration was made under the solemn belief of impending death, after all hope of recovery had been resigned, and that every precaution was taken to get the written statement correct.

ID. — ACCUSATION BY DECEASED AGAINST DEFENDANT AFTER ARREST — FAILURE TO REPLY — TACIT ADMISSION — QUESTION OF FACT. — Evidence that the defendant, after he was arrested, was brought before the deceased prior to his death, and that the latter pointed to him and said, "There is the man that hit me with a club and shot me," and that the defendant, though fully understanding what was said, and free to reply thereto, made no reply, is admissible, as tending to show a tacit admission of the accusation, the weight of which was a question of fact for the jury.

ID. — ACCUSATION OF CRIME CALLING FOR REPLY — OPPORTUNITY AND FREEDOM TO REPLY — ARRESTED PERSON. — An accusation of crime, not

replied to, to be admissible, must be made under such circumstances as to afford the accused person an opportunity to act or speak with freedom, and the statement must be one naturally calling for some action or a reply. In this state, an accusation of crime calls for a reply, even from a person under arrest, where the circumstances surrounding him indicate that he was entirely free to reply, if he had chosen to do so.

ID. — STATEMENT IN PRESENCE OF ARRESTING OFFICER. — An arrested defendant is not called upon to make any reply to any question or statement directly from the arresting officer; but the fact that he was under arrest, and that an incriminating statement was made by the deceased in presence of the arresting officer, does not make the failure to reply thereto inadmissible evidence, though the importance thereof is to be determined by the jury, in view of all the surrounding conditions. [Per McFarland, J., concurring specially.]

ID. — CROSS-EXAMINATION — IMPEACHMENT OF DYING DECLARATION. — On cross-examination of a witness, who merely testified to what occurred at the bedside of the deceased, it is not proper to show previous contradictory statements of the deceased, made when he first discovered his wounded condition. Such impeachment can only be made by offering the evidence as part of the defendant's case to contradict the dying declaration.

ID. — PRESENCE OF ANOTHER DEFENDANT ON NIGHT OF SHOOTING — CONSPIRACY — CRIES OF MURDER — RES GESTÆ. — Evidence that the deceased and another defendant, separately accused of the crime, were playing cards on the night of the shooting, about eleven o'clock, and that about one hour thereafter, cries of murder were heard from the deceased, is admissible, both on the ground of conspiracy, where the dying declaration is evidence of such conspiracy, and as part of the *res gestæ*, to establish the time of the assault upon the deceased.

ID. — MISCONDUCT OF PROSECUTING ATTORNEY — UNPROVED MOTIVE OF CRIME — REFERENCE TO CLUB TESTIFIED TO, BUT NOT PRODUCED — RECRIMINATIONS BETWEEN COUNSEL. — An unfounded argument of the district attorney, as to the defendant's motive for the crime being a robbery, is not misconduct. He was justified in alluding to a blood-stained club, proved to have been found in the saloon immediately after the assault, where the testimony shows that the defendant struck and wounded the deceased with a club, though the club was not placed in evidence, or formally offered as an exhibit. Ill-timed recriminations between the district attorney and the counsel for the prisoner are not ground of reversal, where no prejudice to the defendant appears to have resulted therefrom.

ID. — INSTRUCTION — PRESUMPTION OF TRUTHFULNESS OF WITNESS — REBUTTING PROOF — INTEREST AND BIAS. — It is not error to instruct the jury that the presumption that a witness speaks the truth may be repelled by "his interest in the case, or his bias or prejudice against one of the parties," as well as "by the manner in which he testifies," by the character of his testimony, or by evidence affecting.

his character for truth, honesty, or integrity, or by contradictory evidence.

ID. — INSTRUCTIONS AS TO DYING DECLARATION. — An instruction stating, in effect, that the jury were not bound by the fact of the admission by the court of the dying declaration of the deceased to conclude that it was made in view of impending death, but that it was for them to determine whether it was so made, and whether it had been correctly reported, is correct, and favorable to the defendant. A requested instruction for the defendant, as to the weight and conclusiveness of dying declarations, and that a dying declaration, alone, will not support a verdict of guilty, was properly refused.

ID. — SUPPORT OF VERDICT — DYING DECLARATION — SILENCE OF DEFENDANT WHEN ACCUSED. — The dying declaration of the deceased, and the silence of the defendant when accused by the deceased, are sufficient to support a verdict of guilty of murder in the first degree, though there is no other tangible evidence against the defendant.

APPEAL from a judgment of the Superior Court of Santa Cruz County and from an order denying a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Carl E. Lindsay, for Appellant.

Tirey L. Ford, Attorney-General, and A. A. Moore, Jr., Deputy Attorney-General, for Respondent.

BEATTY, C. J. — Shortly before midnight of February 10, 1900, Garrett D. Loucks was assaulted, beaten, and shot in his saloon at Santa Cruz. Two days later, he died from the effects of one of the gunshot wounds, and by a dying declaration accused the above-named appellant and one Joseph Teshara of the crime. Appellant and Teshara were separately accused, by information, of the murder, and after separate trials were both convicted. Appellant was first tried, and convicted of murder in the first degree, upon which he was sentenced to life imprisonment. Teshara was next tried, and convicted of murder in the second degree, and sentenced to ninety years' imprisonment. Each defendant has appealed from the judgment against him and from an order denying him a new trial. In many particulars the two cases are identical, and, the appellants being represented by the same counsel, they are submitted as to most of the alleged errors upon the same argument. The more extended and elaborate

statement is contained in the briefs in Teshara's case, but the case of Amaya will be first considered, because it was the first tried in the superior court.

1. It is contended that the superior court erred in over-ruling certain challenges to the panels of jurors returned upon open *venire*. After five jurors had been selected and sworn to try the case, the general panel became exhausted, and the sheriff was directed to summon ten talesmen from the body of the county. Upon his return of this *venire*, the defendant challenged the panel for bias of the sheriff. (Pen. Code, sec. 1064.) The challenge was denied by the people, but after an examination of the sheriff upon his *voir dire*, the district attorney withdrew his objections and consented that the challenge might be allowed. The court, however, refused to sustain the challenge, and the panel was retained. After it was exhausted, another open *venire* was issued to the same officer for fifteen talesmen. To this panel another challenge was interposed, upon the same ground, and was likewise denied. When this panel was exhausted, a third special *venire* for additional talesmen was issued, and upon its return the panel was again challenged, and upon further showing was by the court sustained. In the mean time, however, three jurors, returned upon the first two special *venires*, had been accepted and sworn to try the case, and five had been challenged peremptorily by the defendant. In view of these facts, the court offered the defendant the privilege of challenging peremptorily the three jurors who had been so sworn, without being charged with such challenges, and also offered the defendant five extra peremptory challenges in place of the five he had exercised upon the talesmen sum-moned on the special *venires*. The defendant accepted the latter part of the offer, and actually exercised twenty-five per-emptory challenges, but he refused to challenge the three jurors who had been sworn. We think this action on his part deprives him of any right to complain of the rulings of the court upon his challenges. Conceding them to have been erroneous, the defendant, by availing himself of the privilege offered him by the court, could have protected himself from any possible prejudice caused by the error. His voluntary acceptance of the jurors, when he could have removed them by a mere request without diminishing the number of peremptory

challenges allowed him by the statute, proves conclusively
that they were the jurors he preferred.

2. It is claimed that the superior court erred in sustaining
certain challenges by the people to jurors who stated, in effect,
that although they were not conscientiously opposed to capital
punishment, they would not base a verdict of guilty in a cap-
ital case upon circumstantial evidence. Appellant's conten-
tion is, that since the evidence against him was direct, and
not circumstantial, the conscientious scruples of these jurors
had no existence, or, at least, no room for operation in this
case. It is a sufficient answer to this argument to say that
the court, in ruling upon the challenge, could not assume that
the people's case would derive no support from circumstantial
evidence. A juror whose conscience will not permit him to act
upon legal evidence in a capital case is properly held to be
disqualified. Besides, the allowance of a challenge for implied
bias is not the subject of an exception. (Pen. Code, sec. 1170;
*People* v. *Arceo*, 32 Cal. 40; *People* v. *Manahan*, 32 Cal. 72; *Peo-
ple* v. *Murray*, 85 Cal. 356; *People* v. *Collins*, 105 Cal. 511; *People*
.v. *Durrant*, 116 Cal. 199; *State* v. *Larkin*, 11 Nev. 326; *People* v.
*Murphy*, 45 Cal. 142.)

3. It is contended that the superior court erred in admit-
ting in evidence the dying declaration of Loucks, for two
reasons: 1. Because it was not shown to have been made in
view of impending death; and 2. Because the language was
dictated by others, and was not the correct expression of his
own recollection of the assault.

A careful reading of the voluminous evidence preliminary to
the offer of the dying declaration convinces us that these
objections are unfounded. It shows very clearly that the dec-
laration was made under the solemn belief of impending
death, after all hope of recovery had been resigned, and that
every precaution was taken to get the statement correct. The
case is widely different from *People* v. *Fuhrig*, 127 Cal 412,
and more closely resembles *People* v. *Bemmerly*, 87 Cal. 117,
where it was said: "*Aliunde* the written declaration, there is
sufficient evidence it was made under a sense of impending
death."

4. Within an hour or two after Loucks was shot, the appel-
lant and Teshara were arrested and brought to his bedside,
where, in response to questions by the officers, he pointed to

appellant and said, " There is the man that hit me with a club and shot me"; and pointing to Teshara, said, " There is the man that told him to shoot, and shoot to kill." To this statement appellant made no reply, but Teshara said, " Mr. Loucks, you surely are mistaken." Appellant and Teshara were at the time in the custody of a constable and the under-sheriff, and a number of other persons were present, the prisoners being close to the bedside of Loucks, the others standing near. There is no reason to doubt that appellant heard and fully understood the accusation made against him, and that he was as free to reply as a person under arrest ever is. When evidence of these facts was offered by the people, the defendant objected to it as incompetent and hearsay, and because it had not been shown that the circumstances were such that he would feel at liberty to reply, or called upon to make any reply, and because the statement and conversation were in the presence of the arresting officers, and while he was under arrest. This objection was overruled by the court, and the ruling is here assigned as error. It is no doubt true, that, to render evidence of this character admissible, the occasion and the circumstances must have been such as to afford the accused person an opportunity to act or speak, and the statement must have been one naturally calling for some action or reply. (Greenleaf on Evidence, par. 197.) But in this state it has been uniformly held that an accusation of crime does call for a reply, even from a person under arrest. (*People* v. *McCrea*, 32 Cal. 98; *People* v. *Estrado*, 49 Cal. 171; *People* v. *Ah Yube*, 53 Cal. 613.) In other jurisdictions it has been held that silence, when a party is under arrest, does not sustain the hypothesis of acquiescence (Wharton's Criminal Evidence, sec. 680), because the party is not free to speak. The leading authority upon this proposition is *Commonwealth* v. *Kenney*, 12 Met. 235,[1] in which the opinion of the court was delivered by Chief Justice Shaw. This, I say, is the leading authority, not because it sustains the proposition to its full extent, but only because it is the sole basis of all the subsequent decisions which do fully sustain the proposition. A careful examination of Judge Shaw's opinion, however, will show that he did not decide, or intend to be understood, that the mere fact that an accused person is under arrest will always require the ex-

[1] 46 Am. Dec. 672.

clusion of statements made in his presence. This is what he says: "In some cases, where a similar declaration is made in one's hearing, and he makes no reply, it may be a tacit admission of the facts. But this depends on two facts: 1. Whether he hears and understands the statement, and comprehends its bearing; and 2. Whether the truth of the facts embraced in the statement is within his own knowledge or not; whether he is in such a situation that he is at liberty to make any reply; and whether the statement is made under such circumstances and by such persons as naturally to call for a reply, if he did not intend to admit it. If made in the course of any judicial hearing, he could not interfere and deny the statement; it would be to charge the witness with perjury, and alike inconsistent with decorum and the rules of law. So if the matter is of something not within his knowledge; if the statement is made by a stranger, whom he is not called on to notice; or if he is restrained by fear, by doubts of his rights, by a belief that his security will be best promoted by his silence: then no inference of assent can be drawn from that silence. Perhaps it is within the province of the judge, who must consider these preliminary questions in the first instance, to decide ultimately upon them; but in this present case he has reported the facts, on which the competency of the evidence depended, and submitted it as a question of law to the court. The circumstances were such that the court are of opinion that the declaration of the party robbed, to which the defendant made no reply, ought not to have been received as competent evidence of his admission, either of the fact of stealing, or that the bag and money were the property of the party alleged to be robbed. The declaration made by the officer who first brought the defendant to the watch-house, he had certainly no occasion to reply to. The subsequent statement, if made in the hearing of the defendant (of which we think there was evidence), was made whilst he was under arrest, and in the custody of persons having official authority. They were made by an excited, complaining party, to such officers, who were just putting him into confinement. If not strictly an official complaint to officers of the law, it was a proceeding very similar to it, and he might well suppose that he had no right to say anything until regularly called upon to answer."

From this it appears very clearly that the question was sub-

mitted to the supreme court of Massachusetts to be decided
upon the special facts of that case, and that the proposition
decided was, merely, that, under all the circumstances there
appearing, including the fact of arrest, *the prisoner might well
have supposed that he had no right to say anything until regu-
larly called upon to answer.*   In other and subsequent cases in
Massachusetts, Texas, Iowa, and Missouri, *Commonwealth* v.
*Kenney,* 12 Met. 235,[1] has been construed as holding that the
mere fact of arrest is sufficient ground in all cases to exclude
statements affecting the accused, made in his presence, and it
has been adopted and followed in that sense.   We think, for
the reasons above stated, that it does not sustain the proposi-
tion to which it has been so frequently cited.   It does not
make the fact that the accused is in custody the final test, but
has regard to all the circumstances surrounding him at the
time, in determining whether he would feel free to act or reply
to the accusation, and this, except as to the preliminary ruling,
is a question for the jury, rather than for the court.   In the
present case we can see no reason to conclude that the court
erred in holding that the appellant was entirely free to reply
if he had chosen so to do; and, moreover, we do not feel at
liberty to disregard the authority of the cases above cited from
our own decisions.

5. The defendant's counsel, in cross-examining one of the
witnesses who testified to what occurred at the bedside of
Loucks, asked him in relation to some previous statements
made at the time when Loucks was first discovered in his
wounded condition,—statements which it is claimed would
have contradicted or qualified the accusations he made in de-
fendant's presence.   These questions were objected to upon
the ground, among others, that it was not proper cross-exami-
nation, and upon this ground the objections were properly
sustained.   If the defendant had offered this evidence as part
of his own case, to contradict the dying declaration of Loucks,
it would have been clearly admissible, on the authority of
*People* v. *Lawrence,* 21 Cal. 371, but the ruling of the court on
the offer as made was correct.

6, 7. The court did not err in overruling the objections to
the testimony of Morrissey and Foreman.   Morrissey testified
that he was in the saloon of deceased, about eleven o'clock on

[1] 46 Am. Dec. 672.

the night of the shooting, and saw him at that time playing cards with Teshara, and Foreman testified that he lived near the saloon, and was awakened a little before twelve o'clock by cries of "murder." The objection to this testimony is, that it bore only against Teshara, and that there was no evidence of a conspiracy between Teshara and defendant. There was, however, evidence of such a conspiracy in the dying declaration of Loucks, and aside from this the facts testified to were of the *res gestæ*,—they established the time of the assault,—a fact of importance in every trial of this kind.

8. There is the usual complaint of misconduct of the prosecuting attorney, but we think that in this case it is scarcely justified. His theory that the motive of the crime was robbery, as put forward in his argument to the jury, may have had no support in the evidence, but an unfounded argument is not misconduct. What he said about the club was not justly subject to criticism. The evidence showed that a blood-stained club was found in Loucks' saloon immediately after the assault, —he declared that he was struck with a club,—the wound on his head was made by such an instrument, and he declared that defendant was the man who struck him. In view of this evidence, the club would have been properly put in evidence, and the mere fact that it was not formally offered as an exhibit did not preclude reference to it in the argument. The mutual recriminations between counsel for the state and for the prisoner respecting their official and professional methods were certainly ill-timed, but we cannot see how they could have prejudiced the defendant.

9. The court, at the request of the people, gave the following instruction to the jury: "The jury are the sole and exclusive judges of the effect and value of evidence addressed to them, and of the credibility of the witnesses who have testified in the case, and the character of the witnesses as shown by the evidence should be taken into consideration for the purpose of determining their credibility and the facts as to whether they have spoken the truth. A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies; his interest in the case, or his bias or prejudice against one of the parties, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or by contradictory evidence; and the jury are the exclusive judges of his credibility."

The instruction goes beyond section 1847 of the Code of Civil Procedure, in the addition of the words, "his interest in the case, or his prejudice against one of the parties." But it is not error to instruct the jury that the presumption that a witness will speak the truth may be repelled by proof of his interest or bias. It amounts only to telling them that interest and bias may be considered by them in weighing the testimony, as undoubtedly may be done. This instruction is entirely free from the vice infecting those given in *People* v. *Hertz*, 105 Cal. 663, *People* v. *Shattuck*, 109 Cal. 681, *People* v. *Van Ewan*, 111 Cal. 149, and other cases cited by counsel, in which the attention of the jury was directed by the court to the assumed bias and interest of particular witnesses for the defense. Here, the proposition is general and abstract, not indicating any particular witness as being, in the opinion of the court, subject to its application, and it merely states the undoubted truth that the proved interest and bias of witnesses may be sufficient in some cases to overcome the presumption that they have testified truly. The instruction condemned in *People* v. *Vereneseneckock-ockhoff*, 129 Cal. 499, was to the effect that circumstantial evidence has greater probative force than direct evidence; it was, in other words, an instruction as to the weight of the evidence, — a fault not apparent in this instruction. .

The eighth instruction given by the court is too long to quote. In effect, it told the jury that although it was the province of the court to determine in the first instance the admissibility of the dying declaration of Loucks, they were not bound by the fact of its admission to conclude that it was made in view of impending death, etc., but that it was for them to determine whether it was so made, and whether it had been correctly reported. This was a correct statement, and even if it had not been the law, it was entirely favorable to the defendant.

A number of instructions asked by the defendant were refused, or given only in modified form. They related principally to the doctrine of reasonable doubt in its application to this case. It is sufficient to say with respect to these instructions, that although some of those refused might properly have been given, they contained nothing that was not embraced in other instructions that were given. The instructions asked as to the weight and conclusiveness of dying declarations were properly refused. The court cannot instruct as to the weight of evidence,

and we know of no authority holding that a dying declaration, alone, will not support a verdict of guilty.

10.  The evidence in the case is sufficient to support the verdict.   It is true that the only tangible evidence against the defendant is the dying declaration of Loucks, and his own silence when accused, but we cannot say, as matter of law, that this is insufficient to support the verdict.

The judgment and order appealed from are affirmed.

Garoutte, J., Van Dyke, J., and Harrison, J., concurred.

McFARLAND, J., concurring specially. — I concur in the judgment of affirmance.   I also concur in the opinion of the chief justice, except that I fear that what is said in paragraph 4 of the opinion might be construed as including more than I think the law warrants on the subject there discussed.   I adhere to my concurring opinion in *People* v. *Dole*, 122 Cal. 497,[1] to the point that when a person is arrested on a charge of crime, he is not called upon to make any response to any question asked him by the arresting officer, or to any statement made by such officer, and that his refusal to make any reply to anything the officer may say to him is "not a circumstance incriminating the person arrested, and constitutes no evidence against him."   If, therefore, in the case at bar, the evidence objected to had only shown that appellant had not made any reply to a question or statement of the officer to the appellant, the allowance of such evidence would have been error.   But the incriminating statement was made, not by the officer, but by the deceased; and I do not think that the failure of appellant to make any reply to the deceased is taken out of the category of legitimate evidence by the mere fact that the arresting officer was present.   Of course, a jury might attach very little importance to the failure of an accused person to make response to a statement made by any one; but the evidence is admissible, and it is for the jury to determine its significance, considering all the surrounding conditions.

Rehearing denied.

[1] 68 Am. St. Rep. 50.