[Crim. No. 936. Second Appellate District, Division Two.—February 24, 1923.]

## THE PEOPLE, Respondent, v. BARRY GORDON, Appellant.

[1] CRIMINAL LAW—ASSAULT WITH INTENT TO COMMIT ROBBERY—ASSAULT WITH A DEADLY WEAPON—SUFFICIENCY OF EVIDENCE.— In this prosecution under an information charging assault with intent to commit robbery, assault with a deadly weapon, and assault to commit murder, the evidence, although circumstantial, is sufficient to sustain the verdict of guilty as charged in the first and second counts.

[2] ID.—EVIDENCE—INCRIMINATING STATEMENT—FAILURE TO ACT.— If a defendant, upon hearing a statement made incriminating him, fails to act as it might reasonably be expected that an innocent person would under such circumstances, both the statement and the conduct of the accused are admissible.

APPEAL from a judgment of the Superior Court of Los Angeles County. Sidney N. Reeve, Judge. Affirmed.

The facts are stated in the opinion of the court.

Mart Coles for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CRAIG, J.—The defendants, Barry Gordon, Ralph O'Brien, and William Shea, were prosecuted jointly under an information containing three counts. The first charges assault with intent to commit robbery; the second, assault with a deadly weapon, and the third, assault to commit murder. O'Brien was committed to an asylum for the insane. Shea pleaded guilty to assault with a deadly weapon and Gordon was found guilty as charged in the first and second counts.

[1] It is urged that the evidence is insufficient to sustain the verdict. As against this particular defendant the evidence is circumstantial, but we think it cannot be said that the jury were not warranted in their conclusion as to his guilt. On appeal the truth of the evidence implicating the defendant is not subject to question. This was to the effect that at the time of the commission of the offense, and for a short period prior thereto, Gordon and Shea jointly occupied a room in the Dorris Apartments in Los Angeles. Gordon registered under the name of Thomas and Shea under that of Wright. Before the 26th of June, 1922, Gordon and Shea discussed holding up and robbing a cashier of a film employment concern. On the morning of the 26th of June, 1922, after planning among themselves to rob Harry St. Alwyn, Gordon drove Shea and O'Brien to a point near Eleventh and Hill Streets by automobile. At about the same time Harry St. Alwyn left his place of business carrying a satchel containing about $1,847. After walking a short distance O'Brien approached him and demanded the satchel. O'Brien threatened St. Alwyn with a gun and ordered him to "put them up, put them up." A struggle ensued in which St. Alwyn was badly beaten with a gun in the hands of Shea. But the assailants were unsuccessful in their efforts to secure the satchel and they finally ran. Shea went down an alley, coming out on a street where he stopped for a moment and looked around and then jumped upon a passing automobile, which at that point slackened its speed slightly. This machine was

driven by Gordon, and its number was obliterated. Gordon and Shea were later arrested in their room at the Dorris Apartments. Shea subsequently made a statement concerning the attempted robbery which was read in the presence of Gordon, upon which occasion he, Gordon, said: "I have nothing further to say; you have enough on me to hang me now; if I say anything, my attorneys will talk for me."

In addition to the claim that the evidence is not sufficient to connect Gordon with the commission of any offense, it is insisted that the evidence did not warrant a verdict of guilty upon two counts of the information. No definite reasons are advanced to maintain this proposition nor are any authorities cited except *People* v. *Warriner,* 37 Cal. App. 107 [173 Pac. 489]. However, that case was one having to do with a matter of pleading and is not in point here. The evidence showed that appellant's codefendants and co-conspirators, Shea and O'Brien, engaged in a physical encounter with the witness St. Alwyn, in which they struck him a number of blows both with their fists and with a gun. A construction may have been placed upon the evidence to the effect that at least one of the assaults was made with intent to commit robbery, but that before running Shea struck St. Alwyn with the gun without the specific intent to rob. Such matters involve the weighing and construing of evidence which are within the province of the jury.

[2] The trial court, over the objection of the appellant's counsel that it was hearsay, allowed this statement to be read and a witness to testify to the remark above quoted having been made by Gordon. Shea's confession admittedly implicated Gordon in the crime. There can be no doubt as to the correctness of the ruling to which objection is made. If a defendant, upon hearing a statement made incriminating him, fails to act as it might reasonably be expected that an innocent person would under such circumstances, both the statement and the conduct of the accused are admissible. (*People* v. *Bradley,* 23 Cal. App. 44 [136 Pac. 955]; *People* v. *Teshera,* 134 Cal. 542 [66 Pac. 798]; *People* v. *Phillon,* 138 Cal. 530 [71 Pac. 650].) The defendant's conduct here was not an unequivocal admission

of guilt, but it was susceptible of such a construction and was therefore a matter for the jury to weigh. (*People* v. *Bradley, supra.*) Nor does the fact that the entire incident occurred while the defendants were under arrest render the evidence of what was said and done subject to objection. (*People* v. *Schoon,* 177 Cal. 678 [171 Pac. 680]; *People* v. *Byrne,* 160 Cal. 217 [116 Pac. 521]; *People* v. *Amaya,* 134 Cal. 531 [66 Pac. 794].)

It is next objected that counsel for the people caused a court reporter to read in the presence of the jury a statement made by a deputy district attorney at the time Gordon's codefendant, Shea, was sentenced. We are assured that the reading of this statement was "without any color of right." However, an inspection of the record clearly discloses that at the time the evidence was offered and admitted, the prosecutor indicated that it was offered as impeachment of Shea, and as such there can be no doubt that it was admissible. The facts in regard to the introduction of this evidence were as follows: Shea first testified that Gordon had refused to take any part in the attempted robbery, and that when the witness boarded the automobile in which the escape was made he was greatly surprised to see Gordon driving it. After laying a foundation for impeachment, Shea was then asked if he had not at the time of his arraignment answered "yes" to a question put by the court as follows: "Those were substantially the facts?" This inquiry had reference to a statement just read by Deputy District Attorney Fricke, and which the witness had said was substantially correct, contained assertions entirely inconsistent with the testimony which he had given as a witness in the trial of this case, and which we have quoted. Fricke purported to briefly review the salient facts of the hold-up, and, among other things, he said that "Gordon was driving the automobile; it was waiting in the vicinity, and which pulled up there right after this thing had happened. . . . Shea ran and jumped on an automobile which had an obliterated number on it. That is the automobile which we believe the evidence shows was driven by Gordon. . . . Both Shea and O'Brien confessed and said Gordon was in on the hold-up, and drove them to the place in the automobile and was the driver of the car in

which Shea escaped from the scene." It is too apparent for argument that this was proper impeachment.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 26, 1923.