STATE, RESPONDENT, *v.* LOUIE WON, APPELLANT.

(No. 5,914.)

(Submitted June 15, 1926.  Decided June 24, 1926.)

[248 Pac. 201.]

*Criminal Law—Homicide—Information—Sufficiency—Failure of Defendant to Deny Accusation of Guilt Made in His Presence—Evidence—Admissibility—Jury—Inspection of Premises—Discretion—Record on Appeal.*

Homicide—Information—When Sufficient.
    1.  An information charging murder, otherwise sufficient is not rendered insufficient by failure to allege how or by what means the killing was done.

Same—If Trial by Impartial Jury, Defendant cannot Complain of Overruling of Challenge to Venireman.
    2.  Where one charged with murder was tried by a jury of fair and impartial men it is all he may demand; hence he cannot complain of alleged error in sustaining a challenge of the county attorney to a venireman who had conscientious scruples against inflicting the death penalty.

Appeal—Record—Padding of Bill of Exceptions Disapproved.
    3.  Trial courts should not permit counsel to include useless matter in a bill of exceptions.

Homicide—Failure of Accused to Deny Accusation of Guilt Made in His Presence—Admissibility in Evidence.
    4.  Under subdivision 3 of section 19531, Revised Codes of 1921, providing that upon a trial evidence may be given of an act or

1.  See 13 R. C. L. 899.
4.  See 8 R. C. L. 192.

declaration of another in the presence and within the observation of a party, and his conduct in relation thereto, *held* that where one who on being accused of crime remains silent, though he has full liberty to speak, his failure to reply or deny is relevant as showing his guilt, the accusatory statement being admissible, not as evidence of the truth of the statement, but as tending to show his admission by his silence; the rule applies though defendant was under arrest at the time, but does not extend to statements made in his presence at a judicial hearing or proceeding.

Same—Accusatory Statements—Failure of Defendant to Deny—Rule.
  5.  To render testimony of the nature of the above admissible it must be shown either that defendant did in fact hear what was said by way of accusation or that he was in a position to hear; the question being one of fact unless it is shown positively that he was within hearing distance and there is no evidence that his hearing was impaired.

Same.
  6.  While evidence of an accusatory statement made in the presence of a defendant in a language which he does not understand and his failure to deny it is not admissible, where one who swore he did not understand English and testified through an interpreter on the trial of his case, was shown to have carried on conversations with deceased before killing him and with various persons in ordinary English and to have a good understanding thereof, the court did not err in holding it admissible.

Same.
  7.  That witnesses who testify that upon pointing defendant out in the jailer's office as the person who had shot deceased he remained silent, were not eye-witnesses to the shooting did not render their testimony inadmissible.

Same—Accusatory Statements—Failure of Defendant to Deny—Improper Instruction.
  8.  An offered instruction correctly stating the rule relative to the admissibility of testimony relating to the silence of defendant when accused of crime, but adding that before the jury could consider it they should find that defendant heard and understood the charge "under circumstances not only permitting but calling on him for a denial, taking into consideration all the circumstances and the persons who were present," *held* too general to be accurate as applied to the case on trial with a tendency to confuse rather than enlighten the jury, and therefore properly refused.

Same—Failure of Defendant to Deny Accusation of Guilt—Probative Force of Evidence not Great—Cautionary Instruction.
  9.  The probative force of evidence of the nature referred to above is not great; it must be received with caution and the court may properly instruct the jury accordingly.

Same—Offered Instructions—Correct Only in Part—Court may Refuse It in Its Entirety.
  10.  Where an offered instruction is correct in part only, the court may reject it in its entirety, it not being its duty to separate the correct portion from the incorrect.

---

  10.  Discretion of court as to view of premises, see note in 42 L. R. A. 372.  See, also, 26 R. C. L. 1017.

Same—Inspection of Premises by Jury—When Refusal not Abuse of Discretion.
11. Whether the district court shall order an inspection of the premises in which murder was committed is a question of discretion which will not be reviewed in the absence of a clear showing of error; and where after an inspection had been made defendant contended that conditions had been changed by the installation of a brighter light at the head of the stairs on which the shooting occurred than was there at the time the killing was done, he being permitted to show that such was the fact, refusal of the court to permit a second inspection upon restoration of the lighting conditions as they were before, as well as refusal to order its restoration, *held* not error.

[1]   Homicide, 30 C. J., sec. 288, p. 101, n. 77.
[2]   Criminal Law, 17 C. J., sec. 3580, p. 239, n. 27.   Juries, 35 C. J., sec. 392, p. 354, n. 34.
[3]   Criminal Law, 17 C. J., sec. 3422, p. 138, n. 52.
[4]   Criminal Law, 16 C. J., sec. 1243, p. 626, n. 80; sec. 1247, p. 629, n. 23, 24; sec. 1256, p. 631, n. 67, 68, 70; sec. 1259, p. 633, n. 91; sec. 1261, p. 634, n. 96.
[5]   Criminal Law, 16 C. J., sec. 1257, p. 632, n. 76, 77, 78.
[6]   Criminal Law, 16 C. J., sec. 1257, p. 632, n. 81; sec. 2286, p. 926, n. 63.
[7]   Criminal Law, 16 C. J., sec. 1260, p. 634, n. 95.
[8]   Criminal Law, 16 C. J., sec. 1256, p. 632, n. 72 New; sec. 2290, p. 930, n. 90 New; sec. 2423, p. 1004, n. 43.
[9]   Criminal Law, 16 C. J., sec. 1256, p. 632, n. 71, 72; sec. 2422, p. 1004, n. 37.
[10]   Criminal Law, 16 C. J., sec. 2090, p. 826, n. 94; 17 C. J., sec. 3579, p. 237, n. 9; sec. 3662, p. 317, n. 10.   Homicide, 30 C. J., sec. 79, p. 1104, n. 39; sec. 566, p. 320, n. 13 New.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

LOUIE WON was convicted of murder, and appeals from the judgment and an order denying him a new trial.   Affirmed.

*Mr. Clarence Hanley* and *Mr. Frank L. Riley*, for Appellant, submitted a brief and one in reply to that of the State; *Mr. Riley* argued the cause orally.

"It may be stated as a general rule that statements made to or in the presence of a person, accusing him of the commission of or complicity in a crime, are, when not denied, admissible in evidence against him as warranting an inference of the truth of the statements.   But if the accused is held in custody under a criminal charge, mere silence should afford no

inference whatever of acquiescence in statements of others made in his presence. He has the undoubted right to keep silence as to the crime with which he is charged, and is not called upon to reply to or contradict such statements. Statements made under such circumstances, it is held by the weight of authority, are not admissible against the prisoner, because they do not even tend to support the hypothesis of acquiescence, though it is held in a number of jurisdictions that an accusation of crime calls for a reply even from a person under arrest.'' (1 R. C. L., pp. 479, 480; *Commonwealth* v. *Kenney,* 12 Metc. (Mass.) 235, 46 Am. Dec. 672; *Merriweather* v. *Commonwealth,* 118 Ky. 870, 4 Ann. Cas. 1039, 82 S. W. 592; *Commonwealth* v. *McDermott,* 123 Mass. 440, 25 Am. Rep. 120; *State* v. *Ferrone,* 97 Conn. 258, 116 Atl. 336; *People* v. *Smith,* 172 N. Y. 210, 64 N. E. 814; *People* v. *Marendi,* 213 N. Y. 600, 107 N. E. 1058; *Johnson* v. *State,* 151 Ga. 21, 105 S. E. 603; *People* v. *Pfanschmidt,* 262 Ill. 411, Ann. Cas. 1915A, 1057, 104 N. E. 804; Wharton's Crim. Ev., sec. 680.)

Silence of defendant when charged with a crime, under circumstances indicating that he failed to understand what was said, could not be used as an admission. (*Commonwealth* v. *DePalma,* 268 Pa. 25, 110 Atl. 756; *People* v. *Kennedy,* 164 N. Y. 449, 58 N. E. 652; *Hauger* v. *United States* (C. C. A.), 173 Fed. 54, 97 C. C. A. 372; *People* v. *Koerner,* 154 N. Y. 355, 48 N. E. 730; *Queener* v. *Morrow,* 1 Cold. (Tenn.) 123; *Weightnovel* v. *State,* 46 Fla. 1, 35 South. 856; *Jones* v. *State,* 65 Ga. 147; *Bob* v. *State,* 32 Ala. 560; *State* v. *Epstein,* 25 R. I. 131, 55 Atl. 204; *Wright* v. *Maseras,* 56 Barb. (N. Y.) 521; *State* v. *Kysilka,* 84 N. J. L. 6, 87 Atl. 79 (affirmed in 85 N. J. L. 712, 90 Atl. 309); *Bloomer* v. *State,* 75 Ark. 297, 87 S. W. 438; *Lumpkin* v. *State,* 125 Ga. 24, 53 S. E. 810; *O'Hearn* v. *State,* 79 Neb. 513, 25 L. R. A. (n. s.) 542, 113 N. W. 130; *State* v. *Baruth,* 47 Wash. 283, 91 Pac. 977.)

The probative force of this kind of evidence is not great, and it is to be received with caution. (16 C. J. 632, 2; *State* v. *Pitts,* 177 N. C. 543, 98 S. E. 767; *Davis* v. *Commonwealth,*

204 Ky. 809, 265 S. W. 316; *McCormick* v. *State,* 181 Wis. 261, 194 N. W. 347.)

If when under arrest the mere silence of the defendant constitutes evidence that makes for his guilt, then one purpose of the organic law is thwarted, for the reason that the defendant is required to furnish evidence against his will in a compulsory way. (*Johnson* v. *State,* 151 Ga. 21, 105 S. E. 603.) "If it be admitted that, while a person is under arrest, his failure to reply to statements made in his presence can be construed as an admission of the truthfulness of such statements, then the state would be able to do indirectly what the Constitution expressly provides it shall not do directly." (*Ellis* v. *State,* 8 Okl. Cr. 522, 43 L. R. A. (n. s.) 811, 128 Pac. 1095; *Towery* v. *State,* 13 Okl. Cr. 216, L. R. A. 1917D, 491, 163 Pac. 331.)

*Mr. L. A. Foot,* Attorney General, *Mr. I. W. Choate,* Assistant Attorney General, *Mr. T. E. Downey,* County Attorney of Silver Bow County, and *Mr. Nick Rotering,* Deputy County Attorney, for the State, submitted a brief; *Mr. S. K. Foot,* Assistant Attorney General, and *Mr. Downey* argued the cause orally.

Citing: 16 C. J. 633; *People* v. *Gordon,* 61 Cal. App. 98, 214 Pac. 276; *Diamond* v. *State,* 195 Ind. 285, 144 N. E. 250, 466; *Doby* v. *State,* 15 Ala. App. 591, 74 South. 724; *People* v. *Foster,* 211 Mich. 486, 179 N. W. 295; *People* v. *Amaya,* 134 Cal. 531, 66 Pac. 794; *Green* v. *State,* 97 Tenn. 50, 36 S. W. 700; *People* v. *Byrne,* 160 Cal. 217, 116 Pac. 521; *Hardy* v. *State,* 150 Wis. 176, 136 N. W. 638.

No offer was made by the defendant to show that he did not understand or speak the English language. It was clearly shown that prior to his arrest that the defendant understood and spoke English. It was for the court to say whether or not a sufficient showing of the defendant's understanding of this language had been made. (*State* v. *Sherman,* 35 Mont. 512, 90 Pac. 981, and *State* v. *Berberick,* 38 Mont. 423, 16

Ann. Cas. 1077, 100 Pac. 209.) The fact that the defendant testified through an interpreter is of little, if any, importance, as an interpreter might well be used notwithstanding defendant had sufficient knowledge of the English language to understand what was said by witnesses Brown, Miller and Druary. (*People* v. *Ong Mon Foo,* 182 Cal. 697, 189 Pac. 690, 693.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

On the morning of the 10th of April, 1925, a murder was done in the city of Butte in a rooming-house on West Mercury Street, known as the Grady block, kept by one Peter Pavicic, where white women and Chinamen roomed, and where Chinamen came "to buy drinks." The record discloses that a Chinaman, alleged to be Louie Won, the defendant, was seen entering room 10, occupied by Dolly Druary, about midnight. About five minutes after 2 o'clock screams in room 10 brought thereto Elsie Brown and Helen Miller. The Druary woman was on the bed and the Chinaman was choking her. He hit her in the face and about the nose which caused blood to flow freely from nose and mouth. Helen Miller called for Pavicic, who came into the room and inquired: "What is the trouble?" to which the Chinaman replied: "None of your damned business." This conversation followed: "Pavicic: Well, I am asking you in a nice way what is the trouble? The Chinaman: It is none of your damned business. Pavicic: Well, you know you cannot hit a woman in my house. The Chinaman: Well, she cheated me. Pavicic: You will have to leave my house because I won't stand for you hitting a woman in my house. The Chinaman: I don't have to leave your house. Pavicic: Well, you will have to leave." Pavicic then took the Chinaman by the collar of the coat, led him to the stairway and said, "Now there is the door, get out and don't ever come up these steps again." The Chinaman started back to the room, but Pavicic again led him to the stairway and "gave him a

boost with his knee" which accelerated the movement of the Chinaman down the stairway. There the Chinaman opened the door, and standing in the doorway said to Pavicic: "Come down here," calling Pavicic an opprobrious name, to which Pavicic replied: "Well, there is no use me coming down there." He turned and walked into the room. The Chinaman lingered an instant, saying: "Well, I will come back and get you," employing the same ugly name. About three minutes later the same Chinaman, identified by Elsie Brown as Louie Won, the defendant, came up the stairs with a revolver in his right hand. Elsie Brown and Pavicic then were coming from room 10. The woman said to Pavicic: "For God's sake, Pete, get back, he has a gun." Pavicic ran to the head of the stairs and attempted to grab the gun, telling the woman to get back. Won shot three times, killing him instantly. Won then fired two shots at Miss Brown. She ran into the room, slammed the door and locked it. Won tried the door, knocked and then went away. Shortly after this Miss Brown saw Pavicic lying on the stairway in a pool of blood, with three wounds in the right side of his face and head,—one through his neck, one through his face, and one through his temple.

At the time of the homicide, testified Miss Brown, the Chinaman, Louie Won, who will be referred to as the defendant, "was dressed in a blue suit with a brown stripe; he had on a black velour hat and black oxfords."

The defendant was apprehended in a coal-chute, or coal-bin, in the basement of a Chinese laundry on East Park Street, at 7 o'clock on the morning of the homicide. He then had on a light cap, very dirty, a green sweater, a jumper, two pairs of overalls, waist and bib, over a blue suit with a light-green stripe, according to one of the officers. The officers took the defendant to the jailer's office in the city jail. Some women were brought to the office, one of whom was Dolly Druary. In the presence and hearing of the defendant she

said: "There is the man that did the shooting," and she pointed at the defendant. He did not say anything. From the city jail the officers took the defendant to the Grady block, where he was confronted with Elsie Brown and Clara Pavicic. There in the presence and hearing of the defendant and the officers, Elsie Brown said, "That is the man that shot Peter," indicating the defendant. The defendant did not say anything. At that time, Miss Brown testified, the defendant had changed his appearance; since the homicide he had shaved off his mustache, and "he had on two pairs of overalls, an old green sweater, sleeveless, and two overall jumpers." The trousers of the blue suit were underneath the two pairs of overalls. He had on the same shoes as at the time of the homicide. Later, on the same day, in the office of the county attorney, there were present the defendant, deputy county attorney Rotering, deputy sheriff Duggan, John Downey, Elsie Brown, Helen Miller and Dolly Druary. At that time and place, in the presence and hearing of the defendant, each of the women said that Louie Won was the man who shot Peter Pavicic. The defendant maintained silence.

In November, 1925, the county attorney of Silver Bow county filed an information against the defendant, accusing him of the crime of murder of the first degree. The defendant was duly arraigned, filed a motion to set aside the information, which the court denied, and a demurrer which the court overruled. He then entered a plea of not guilty. The cause came on for trial November 30, 1925, and upon December 2, 1925, the jury found the defendant guilty of murder in the first degree and left the punishment to be fixed by the court. Thereafter the defendant moved for a new trial, which was denied, and the court pronounced judgment that the defendant be hanged by the neck until dead. The defendant has appealed from the judgment and from the order denying him a new trial.

At the trial the defendant testified through an interpreter. He stated that he was in a gambling-house at Park and Main Streets in Butte at about 1 o'clock on the morning of the homicide, remained there from half an hour to an hour, and then entered another gambling-house nearby, where he remained about forty-five minutes. After leaving the second gambling-house he went to the corner of Galena and Wyoming Streets, where he met three or four boys who would not let him pass, but frightened him and chased him. He then went to the Chinese laundry, where he was arrested later, arriving there between 2:45 and 3 o'clock in the morning. When he entered the laundry, he said, he wore a pair of trousers and two pairs of overalls. He remained in the laundry rather than going home because the boys were after him. He had not slept that night before going to the laundry, and putting on a jacket he went into the coal-hole where there was some old bedding and fell asleep. He did not shave at any time that night and did not have a mustache at any time on the night of April 10th. He denied that he was at the Grady block at any time of the morning of April 10th after midnight, and denied that he had a gun at any time that night, and swore that he did not shoot Peter Pavicic. He further testified that he did not understand the English language and did not hear or understand anyone accuse him of being the man that did the shooting, or the man that shot Peter Pavicic. He came to the United States in 1916. Testimony was introduced in behalf of the defendant tending to prove an alibi.

At the time of the trial Dolly Druary was in Wallace, Idaho. The whereabouts of Helen Miller were unknown.

1. The information is challenged for the reason that it does [1] not allege the manner or means by or with which the defendant is charged with having committed the crime of murder. The charging paragraph of the information is as follows: "That at the county of Silver Bow, State of Montana, on or about the 10th day of April, A. D. 1925, and before the filing

of this information, the said defendant did wilfully, unlaw-
fully, feloniously, intentionally, deliberately and premeditatedly,
with malice aforethought, kill and murder one Peter Pavicic, a
human being." Defendant's point is without merit. (*State
v. Hayes,* 38 Mont. 219, 99 Pac. 434; *State v. Nielson,* 38 Mont.
451, 100 Pac. 229; *State v. Crean,* 43 Mont. 47, 114 Pac. 603.)

2. Counsel for defendant say the court erred in sustaining
[2] the challenge of the county attorney to the venireman
Roe. It appears this gentleman had conscientious scruples
against inflicting the death penalty, or at least his attitude
with respect to the matter was uncertain. The court, it seems
to us, exercised its discretion properly, but regardless of that
the record shows that the defendant was tried by a jury of
fair and impartial men and this is all he could demand. (*State
v. Griebel,* 65 Mont. 390, 211 Pac. 331; *State v. Vucokovich,*
61 Mont. 480, 203 Pac. 491; *Territory v. Roberts,* 9 Mont. 12,
22 Pac. 132.)

Notwithstanding that the only question raised by the
[3] defendant concerning the selection of the jury with
respect to Mr. Roe, fifty-three pages of the transcript are taken
up with the proceedings of the court in selecting the jury.
That part of the record concerning the competency of Mr.
Roe embraces but two pages. Thus the record is padded to
the extent of fifty-one pages. Trial courts should not permit
counsel to include useless matter in a bill of exceptions.

3. Counsel for defendant earnestly insist that the court
[4] committed error in admitting the testimony of Kelly and
Duggan, deputy sheriffs, to the effect that at the city jail,
at the Grady block, and at the county attorney's office, state-
ments were made by third parties in the presence and hearing
of the defendant after his arrest and while he was in custody,
to the effect that the defendant was the man who shot Peter
Pavicic and that the defendant made neither response nor com-
ment thereupon.

Section 10531 of our 1921 Code provides that "evidence may
be given upon a trial of the following facts": Then follow

sixteen subdivisions; 2 and 3 are closely related: "2. The act, declaration, or omission of a party, as evidence against such party. 3. An act or declaration of another, in the presence and within the observation of a party, and his conduct in relation thereto." Subdivision 2 is quoted here merely for its explanatory effect. Subdivision 3 is the one with which we are concerned.

The general rule is that where one on being accused of crime with full liberty to speak, remains silent, his failure to reply or deny is relevant as tending to show his guilt; and the accusatory or incriminating statement is admissible, not as evidence of the truth of the facts stated, but as tending to show accused's admission by silence. (16 C. J. 631, with numerous supporting cases.) Silence is a circumstance, the effect of which is for the jury, and from it, in connection with other facts and circumstances, the jury may infer that accused is guilty. (*Commonwealth* v. *Aston*, 227 Pa. 112, 75 Atl. 1019; *Territory* v. *Harrington*, 17 N. M. 62, 121 Pac. 613; *Jackson* v. *State*, 167 Ala. 44, 52 South. 835; *Conway* v. *State*, 118 Ind. 482, 21 N. E. 285.)

Counsel for defendant contend, and cite high authority to sustain their position, that the rule admitting evidence of the character in question does not apply where the accused is held in custody under a criminal charge when the accusatory statement is made. We think, however, in view of our statute, the distinction is not warranted. Where an act is done or declaration made by a person in the presence and within the observation of the accused, the conduct of the accused in relation thereto, whether it be by word of mouth or other demonstration, or by silence, and whether or not the accused is under arrest, properly may be shown to the jury. (An exception may be the unequivocal denial of the accusation by the accused: *People* v. *Teshara*, 134 Cal. 542, 66 Pac. 798; *Diamond* v. *State*, 195 Ind. 285, 144 N. E. 250, 466.)

In *People* v. *Gordon*, 61 Cal. App. 98, 214 Pac. 276, it is said that if a defendant, upon hearing a statement made in-

criminating him, fails to act as it might reasonably be expected that an innocent person would act under such circumstances, both the statement and the conduct of the accused are admissible, citing *People* v. *Bradley,* 23 Cal. App. 44, 136 Pac. 955; *People* v. *Teshara, supra; People* v. *Philbon,* 138 Cal. 530, 71 Pac. 650. Continuing the court said: "Nor does the fact that the entire incident occurred while the defendants were under arrest render the evidence of what was said and done subject to objection. (*People* v. *Schoon,* 177 Cal. 678, 171 Pac. 680; *People* v. *Byrne,* 160 Cal. 217, 116 Pac. 521; *People* v. *Amaya,* 134 Cal. 531, 66 Pac. 794.)" And see *Diamond* v. *State, supra; State* v. *Claymonst,* 96 N. J. L. 1, 114 Atl. 155; *Dobey* v. *State,* 14 Ala. App. 591, 74 South. 724; *Simmons* v. *State,* 7 Ala. App. 107, 61 South. 466; *Hardy* v. *State,* 150 Wis. 176, 136 N. W. 638.

The foregoing doctrine was recognized in *State* v. *Fisher,* 54 Mont. 211, 169 Pac. 282. Malloy and Prlja, the officers who had the accused in custody, testified respecting accusatory statements which were made in the presence and hearing of defendants and to the conduct of Fisher, one of the defendants, at the time they were identified by a witness as the men whom he saw running from the scene of the crime. The court held that the evidence was clearly admissible, citing subdivision 3, *supra.* (*State* v. *Pepo,* 23 Mont. 473, 480, 59 Pac. 721; *State* v. *Lucey,* 24 Mont. 295, 302, 61 Pac. 994; *State* v. *Willette,* 46 Mont. 326, 331, 127 Pac. 1013; *People.* v. *Byrne,* 160 Cal. 217, 116 Pac. 521, 529.)

To render the testimony admissible it must be shown either **[5]** that the accused did in fact hear what was said or that he was in a position to hear. The question is one of fact unless it is shown positively that he was within hearing distance and there is no evidence that his hearing was impaired. (16 C. J. 632.) In the instant case the record shows that the statements were made in the presence and hearing of the defendant.

But a statement made in the presence and hearing of an **[6]** accused is not admissible where the statement is in a lan-

guage which the accused does not understand. (*Territory* v. *Big Knot on Head,* 6 Mont. 242, 11 Pac. 670; 16 C. J. 632; *Kalos* v. *United States,* 9 Fed. (2d) 268.)

Recognizing the rule stated in *Territory* v. *Big Knot on Head, supra,* as indubitably correct, the record in this case shows that when the evidence in question was proffered the court had before it ample testimony showing that the defendant understood the English language. All of the colloquy between the defendant and Pavicic just prior to the shooting was in evidence. The necessary foundation had been laid. It was for the court to determine the admissibility of the evidence when offered. (*State* v. *Kacar,* 74 Mont. 269, 240 Pac. 365; *State* v. *Berberick,* 38 Mont. 423, 16 Ann. Cas. 1077, 100 Pac. 209; *State* v. *Sherman,* 35 Mont. 512, 119 Am. St. Rep. 869, 90 Pac. 981), and the court correctly decided that it was entitled to be admitted.

The situation is not changed by the fact that the defendant afterward took the stand and testified through an interpreter swearing that he did not understand the English language and did not know of what he was accused. That the defendant testified through an interpreter is of no importance, as an interpreter might well be used notwithstanding defendant's ability to carry on a conversation between himself and Pavicic and his ability to understand the accusatory statements made by the women. (*People* v. *Ong Mon Foo,* 182 Cal. 697, 189 Pac. 690.) Upon this phase of the case it may be noted that there was testimony in rebuttal to the effect that the defendant had carried on simple conversations in English with his jailers. The jury was fully warranted in believing that the defendant did carry on the conversation with Pavicic, and therefore that he had a good understanding of ordinary English.

Nor does it make any difference that it was not shown that [7] the witnesses Helen Miller and Dolly Druary were not eye-witnesses to the shooting. Whether they were or not the record does not disclose. The testimony was not offered to prove the defendant's identity by the statements of Miller and

Druary, but for the purpose of tending to show the fact indirectly as in the nature of a tacit admission of the defendant by his conduct in failing to comment upon or reply to the accusation. (*Diamond* v. *State, supra.*)

The rule does not extend to statements made in one's presence at a judicial proceeding or hearing. (16 C. J. 634; *Wilkins* v. *Stidger*, 22 Cal. 231, 83 Am. Dec. 67; *Parrot* v. *State*, 125 Tenn. 1, Ann. Cas. 1913C, 239, and note, 35 L. R. A. (n. s.) 1073, 139 S. W. 1056.)

The defendant requested the following instruction: "You [8] are instructed that an act or declaration of another, in the presence and within the observation of a party, and his conduct in relation thereto may be given in evidence. Before any such may be considered by you as any evidence against the defendant, you must find, from all the evidence in the case upon that phase of the case, that the defendant heard and understood the specific charge, if any, made against him, and that he heard it under circumstances not only permitting but calling on him for a denial, taking into consideration all the circumstances and the persons who were present."

To and including the words "against him" the instruction is correct. And had it been requested in that form, undoubtedly would have been given. The words following, "and that he heard it under circumstances not only permitting but calling on him for a denial, taking into consideration all the circumstances and the persons who were present," were taken *vehbatim* from section 122 of Underhill on Evidence, second edition, and doubtless were intended by the author merely as a general statement of the law. An examination of the cases cited in the text shows that not one employs the language used by Mr. Underhill, save *O'Hearn* v. *State*, 79 Neb. 513, 25 L. R. A. (n. s.) 542, 113 N. W. 130, which quotes identical language from the first edition of Underhill on Evidence. The statement is too general to be accurate as applied to a concrete case. It must be borne in mind always that instructions are given to a jury for its guidance. What would the jury have

understood from the language under consideration? We confess we are unable to answer this inquiry. We think it would have tended rather to confuse than to enlighten the jury and the trial judge evidently held that view. Would the jury have understood that it was incumbent upon the state to show that the defendant was called upon to deny the accusation? And in this instance why the use of the word "permitting" and the later reference to the persons present?

There is nothing to indicate that the defendant was not at full liberty to reply to the accusatory statements if he desired to do so. The statements were not made by the officers but by the women Brown, Miller and Druary. There is no intimation that defendant was intimidated in the slightest degree. On the contrary, there is nothing to indicate that he was not accorded every consideration which a prisoner is entitled to receive.

What is the intent and meaning of "under the circumstances * * * calling upon him for a denial?" Under what circumstances must one accused reply? What circumstances call upon, require, demand that he reply? What penalty must he pay if he does not? What inference is the jury entitled to draw from the fact? To these queries the language fails to give any information. A man thus accused may maintain silence if he chooses to do so. And there are occasions when one under arrest, being interrogated by officers, would be foolish if he did not keep a close mouth. If he does maintain silence it is but a circumstance which the jury may consider with the other evidence bearing on the point. If he does not reply he merely takes the risk of having his silence, taken with other pertinent evidence, construed as a tacit admission against him. "His own action under the circumstances in which he is placed is the matter to be considered and weighed by the jury. The degree of credit due to such evidence or implied admissions is to be estimated by the jury, under the circumstances of each case." (*People* v. *McCrea,* 32 Cal. 98.)

The probative force of this kind of evidence is not great,
[9]   and it is to be received with caution (16 C. J. 632), and
the jury might well have been instructed accordingly but no
such instruction was offered.

This court, speaking through Mr. Chief Justice Brantly, in
*State* v. *Lucey,* 24 Mont. 295, 61 Pac. 994, said that caution
should be observed in considering evidence of this character
"lest an inference of guilt be improperly drawn from the fear
'and excitement naturally evinced by an innocent man when
he is suddenly confronted with a serious charge, and is over-
come by contemplation of the possible consequences to himself
and family. (1 Rice on Evidence, sec. 318; *Greenfield* v.
*People,* 85 N. Y. 75, 39 Am. Rep. 636; *McAdory* v. *State,*
62 Ala. 154; Bishop's New Crim. Proc., sec. 1249.)"

The instruction, taken as a whole, is not correct and the
[10]   court did not err in refusing to give it. (*State* v. *Gay,*
18 Mont. 51, 47 Pac. 411.)   It was not the duty of the court to
separate the proper from the improper portions of the offered
instruction. (*Ford* v. *Drake,* 46 Mont. 314, 127 Pac. 1019.)

About the close of the trial the defendant asked that the
[11]   jury be permitted to view the premises where the mur-
der was committed, during the night-time, so that the jurors'
inspection might be under conditions approximately the same
as they were at the time of the homicide.   The court granted
the request.   When the court convened on the following morn-
ing counsel for the defendant stated that the condition and
aspect of the premises had been changed materially since the
commission of the homicide in that a brighter light had been
installed at the head of the stairway by reason of which the
jury "had obtained an erroneous view of the condition of the
premises as they existed at the time the homicide was com-
mitted," thus prejudicing the rights of the defendant.   Coun-
sel were permitted to show that the larger light had been
installed since the homicide.   The change was made between
November 27 and December 1, 1925.   Counsel then asked that
the jury be permitted to view the premises again and that the

court order the lighting conditions restored as they were on the night of the homicide. The court refused to make the order, the judge remarking that the court did not have any control over the property nor the right to order the person in possession to make any changes there. This was not error. The inspection made was at the request of the defendant and unless he knew the conditions there had remained unchanged he took the risk of finding an altered situation. If the person in charge (obviously one not connected in any way with the prosecution) had changed the conditions at the scene of the murder, no one was to blame.

Whether the court shall order an inspection by the jury is a question of discretion which will not be reviewed in the absence of a clear showing of error. (*Maloney* v. *King,* 30 Mont. 158, 76 Pac. 4; *People* v. *Wong Hing,* 176 Cal. 699, 169 Pac. 357.) However, we fail to see how the defendant's case was prejudiced in the least by the change in lighting conditions shown to exist.

The other assignments of error preferred by counsel for defendant, while carefully examined, we do not deem worthy of a special consideration in this opinion. While in several instances the rulings of the court were somewhat technical no reversible error appears.

It appears to us from the record, as undoubtedly it did to the jury upon the trial, that this defendant Louie Won, after committing an assault and battery upon a woman in room 10 in the Grady block, was by the master of the house, Pavicic, compelled to leave the place and that he did so with threats to return and "get" Pavicic, and that shortly he did return with murderous intent, which he carried to a finality. It was murder in the first degree. The defendant then changed his appearance and shortly after the murder concealed himself in a coal-bin underneath a Chinese laundry. He admits that he concealed himself there, and, too, at a time very shortly following the homicide, and the reason he gives for doing so was not believed by the jury; the jury would have been credulous

if it had believed it. Nor was the jury impressed with his attempted alibi.

The judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK AND MATTHEWS concur.

Rehearing denied July 16, 1926.